561 F.2d 1064
 15 Fair Empl.Prac.Cas. 329, 14 Empl. Prac.
Dec. P 7792
Solomon CATES, Jonathan George and James Whitehead, Jr., on
behalf of themselves and all others similarly
situated, Plaintiffs-Appellants,
v.
TRANS WORLD AIRLINES, INC. and Airlines Pilots Association,
Defendants- Appellees.
 No. 489, Docket 76-7420.
 United States Court of Appeals,
Second Circuit.
 Argued March 3, 1977.
Decided Aug. 5, 1977.
 
 Barbara A. Morris, New York City (Nathaniel R. Jones, William D. Wells, New York City, of counsel), for plaintiffs-appellants.
 Peyton H. Moss, New York City (Poletti Freidin Prashker Feldman & Gartner, Richard Schoolman, New York City, of counsel), for defendant-appellee Trans World Airlines, Inc.
 Michael E. Abram, New York City (Cohen, Weiss & Simon, Robert S. Savelson, New York City, of counsel), for defendant-appellee Air Line Pilots Ass'n, International.
 Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Charles L. Reischel, Asst. Gen. Counsel, Vincent J. Blackwood, Atty., Washington, D.C., for Equal Employment Opportunity Commission, amicus curiae.
 Robert E. Williams and Douglas S. McDowell, Washington, D.C., for Equal Employment Advisory Council, amicus curiae.
 Before LUMBARD and OAKES, Circuit Judges, and BRYAN, Senior District Judge.*
 FREDERICK van PELT BRYAN, Senior District Judge:
 Solomon Cates, Jonathan George, and James Whitehead appeal from a July 22, 1976 order of the United States District Court for the Southern District of New York, Charles L. Brieant, J., dismissing their second amended complaint on behalf of themselves and others similarly situated.
 
 
 1
 The principal issues on appeal concern the timeliness of the assertion of claims of unlawful employment practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and unlawful discrimination under 42 U.S.C. § 1981. On an analysis which differs somewhat from that employed by the court below, we affirm the dismissal of the second amended complaint.
 
 I.
 
 2
 Appellants are qualified black flight crew personnel. Appellee Trans World Airlines, Inc. (TWA), a domestic and international airline, is an "employer" within the meaning of 42 U.S.C. § 2000e(b). Appellee Air Line Pilots Association, International (ALPA), is a "labor organization" within the meaning of 42 U.S.C. § 2000e(d) and a "representative" within the meaning of 45 U.S.C. § 151.
 
 
 3
 Appellants Cates and George both alleged that on February 28, 1966 they first applied for flight positions with TWA and, although they were qualified for such employment, were rejected because of their race. Subsequent employment applications by both men were unsuccessful for the same reason, they claim, until 1969. On August 1, 1969, George was hired as a flight engineer, and on October 17, 1969, Cates was also hired in that capacity. On those dates, they became represented for collective bargaining purposes by ALPA and were assigned seniority according to actual date of hire pursuant to the TWA-ALPA seniority system which is the nub of the present controversy. That system, incorporated in the collective bargaining agreements between ALPA and TWA, governs each pilot's job assignments, compensation, eligibility for transfer or promotion, liability to furlough,[1] and order of recall throughout his employment with TWA.
 
 
 4
 Shortly after the hiring of Cates and George, unfavorable business conditions beset TWA. In January, 1970, all flight crew hirings were halted as an economy measure. Then the company began furloughing flight crew personnel who had already been hired. On September 1, 1970 and October 5, 1970, Cates and George, respectively, were furloughed in accordance with the terms of the "last hired-first fired" seniority system. They have not yet been recalled.
 
 
 5
 The allegations of appellant Whitehead are somewhat different. From September, 1957 through May, 1967 he was employed as a pilot in the United States Air Force. Whitehead desired employment in a flight position with TWA from 1957 on, and was at all times fully qualified for such a position. He claims, however, that because of the known discriminatory hiring practices of TWA he was dissuaded from applying for employment at that time. He subsequently did apply, was accepted for employment with TWA in a flight position on March 28, 1966, and entered on duty on May 5, 1967. The seniority Whitehead had accumulated allowed him to withstand the furloughs in 1970, and he has remained in the regular employ of TWA since first entering on duty.
 
 
 6
 On March 24, 1972, all three men filed charges against TWA and ALPA with the Equal Employment Opportunity Commission (EEOC). On November 27, 1973, Cates received an amended notice of right to sue from the EEOC. George and Whitehead received similar notices the following day, November 28, 1973. On December 27, 1973 a complaint was filed in the Southern District of New York, which was first amended on March 4, 1974.
 
 
 7
 The first amended complaint sought declaratory and injunctive relief for the three plaintiffs and a class consisting of
 
 
 8
 all other black persons who may be employed with the defendant TWA in the position of flight engineer, co-pilot, pilot, or captain or who may be presently on furlough from such positions, or who would be employed in such positions but for the defendant TWA's discriminatory employment policies and practices.[2]
 
 
 9
 The principal discriminatory practices specified were TWA's alleged consistent failure and refusal to hire qualified blacks as crew members because of their race, and TWA's and ALPA's maintenance of the date-of-hire seniority system, the effect of which
 
 
 10
 has been and continues to be (to) limit, segregate and classify and discriminate against black employees at TWA's facilities in ways which jeopardize the jobs of and tend to deprive the said black employees of employment opportunities and otherwise adversely affect their status as employees because of their race and color. The seniority system referred to above is not necessary to the operation of the defendant TWA's business.
 
 
 11
 The first amended complaint also charged that TWA had retaliated against employees for filing charges with the EEOC, had failed to take affirmative steps to rectify the effects of its past discriminatory practices, and that both defendants had applied criteria for job advancement and retention which discriminated against black flight crew employees. These employment policies and practices were said to violate Title VII and § 1981. In addition, plaintiffs claimed that ALPA had violated its duty of fair representation with respect to them and the class as a whole.
 
 
 12
 The defendants moved to dismiss the first amended complaint on the ground that the claims under both Title VII and § 1981 were untimely. Specifically, they contended that the Title VII claim must fail because no charge had been filed with the EEOC within 180 days after the alleged unlawful employment practice had occurred as required by § 706(e) of Title VII, 42 U.S.C. § 2000e-5(e),[3] and that the § 1981 claim was barred since it had not been asserted within the applicable three-year statute of limitations.[4] Judge Brieant denied the motions to dismiss the complaint. He ruled that the Title VII claims were timely since "the complaint, on its face, clearly alleges a pervasive pattern of racial discrimination which continues to date." He also concluded that the § 1981 claim was not barred, reasoning that the timely filing of charges with the EEOC tolled the running of the statute of limitations.
 
 
 13
 After the denial of the motions to dismiss, counsel for both sides engaged in negotiations aimed at further distilling the legal issues presented by the case. The result was a "stipulation and order" and "letter of agreement" entered into by plaintiffs and TWA and filed on December 9, 1975. The substance of the agreement was that, in return for certain concessions by TWA which would resolve some ancillary disputes between the parties, the plaintiffs would move to file a second amended complaint which would omit all claims of current discrimination and retaliation against black flight crew members by TWA and would claim that the application to them of the seniority system "perpetuates past alleged discrimination and constitutes a violation of Title VII." It was further agreed that TWA would move to dismiss such an amended complaint on the grounds that none of the claims alleged had been timely asserted and that the complaint fails to state a claim for relief since a "bona fide seniority system operating on a 'last in, first out' basis does not violate Title VII. . . ."
 
 
 14
 Leave to file was granted, and the second amended complaint was filed on December 15, 1975. As agreed, it alleged basically that, since it began doing business until the cessation of all hiring in 1970, TWA had failed and refused to hire qualified blacks as flight crew personnel because of their race, and that the date-of-hire seniority system adversely affected present black flight crew members, many of whom had not been hired at the time of their initial application solely because of their race. Once again, these policies were claimed to violate Title VII and § 1981. In addition, the second amended complaint alleged that by negotiating and entering into the collective bargaining agreements establishing the seniority system, and refusing to modify those agreements to lessen the adverse impact of the system upon black flight crew personnel, both ALPA and TWA had failed in their duty of fair representation of plaintiffs and their class imposed by 45 U.S.C. §§ 151, 181, and 182.
 
 
 15
 As anticipated, motions to dismiss the complaint were again made. The defendants renewed their objections to the Title VII and § 1981 claims as time-barred, and contended that the complaint failed to state a claim since the seniority system qualified as "bona fide" under § 703(h) of Title VII, 42 U.S.C. § 2000e-2(h).[5] This time Judge Brieant granted the motions to dismiss.
 
 
 16
 Addressing the Title VII claims first in his July 22, 1976 memorandum, Judge Brieant noted that it was undisputed that the plaintiffs had filed charges with the EEOC on March 24, 1972. To decide whether their Title VII claims were timely, he reasoned, it was only necessary to determine what unlawful employment practices were alleged in the second amended complaint, and whether those practices had occurred during the 180-day period prior to filing on March 24, 1972, as required by § 706(e), 42 U.S.C. § 2000e-5(e). See supra n.3.
 
 
 17
 Judge Brieant concluded that plaintiffs were alleging two distinct unlawful employment practices:
 
 
 18
 (1) a refusal to hire plaintiffs and the class they seek to represent because of race ("the refusal to hire claim") and (2) the application of a facially neutral, date-of-hire seniority system to all flight deck crew members, including plaintiffs and all other similarly situated Black flight deck crew members, which, by making Blacks more exposed to layoffs than whites, has the effect of carrying forward TWA's past discriminatory hiring practices, now abandoned, into the present ("the seniority claim").
 
 
 19
 On the refusal to hire claim, Judge Brieant ruled that the latest date on which any of the named plaintiffs could have been wrongfully refused employment was the day before they were actually hired March 27, 1966 for Whitehead, July 31, 1969 for George, and October 16, 1969 for Cates. As for the class plaintiffs sought to represent, he found that no member could have been denied a job on account of his race after January, 1970, when TWA halted all hiring for flight crew positions for economic reasons. Since no claims had been filed with the EEOC within 180 days of these dates, Judge Brieant held that the refusal to hire claims must be dismissed.
 
 
 20
 Citing Acha v. Beame, 531 F.2d 648 (2d Cir. 1976), and Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), the district court began its analysis of what it termed the seniority claim on the premise that:
 
 
 21
 Layoffs pursuant to a reduction in force even when carried out according to a facially neutral, date-of-hire seniority system may be an unlawful employment practice as defined by Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a) (1), if an individual can show that but for past discrimination he or she would have been hired early enough to accumulate sufficient seniority to withstand the layoffs.[6]
 
 
 22
 Judge Brieant observed that both Cates and George had stated such "last-hired, first fired" claims, while Whitehead, who was never laid off, alleged that the discriminatory policies of TWA which originally dissuaded him from applying still cost him an earlier chance at promotion and preferable flight routes, equipment flown, and scheduling priorities by reason of the existing seniority system. The key questions, as framed by the court, were "at what point in time these alleged violations occurred and whether or not the violations continued up until 180 days before the filing of charges with the EEOC."
 
 
 23
 Relying on Collins v. United Air Lines, Inc., 514 F.2d 594 (9th Cir. 1975), the court concluded that the 180-day period for filing charges raising "last-hired, first fired" claims such as those of Cates and George begins to run on the date of layoff.[7] Looking to their respective dates of layoff, September 1, 1970 for Cates and October 5, 1970 for George, Judge Brieant found that the jurisdictional requisite of filing within 180 days had not been met by the March 24, 1972 filing, and concluded that the seniority claims in their complaint must also be dismissed.
 
 
 24
 The court below then ruled that since Whitehead had never been furloughed, he had no valid claim under Acha v. Beame, supra. It held that his real grievance was failure to be hired as soon as he might have been, and that he had failed to challenge this in timely fashion. The monthly allocation of a lower level of seniority benefits pursuant to a facially neutral date-of-hire seniority system was not an unlawful employment practice which would trigger the 180-day period as would a lay-off. Any such disadvantages Whitehead experienced were not fresh acts of discrimination, but only the "derivative effects of the prior policies as carried forward by the seniority system." Since Whitehead had not challenged the unlawful act or practice itself, he could not now challenge its derivative effects. Accordingly, his seniority claim was also dismissed.
 
 
 25
 Turning to the § 1981 claims, Judge Brieant noted that in Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), decided after his ruling on the initial motions to dismiss, the Supreme Court had ruled that the filing of a charge with the EEOC does not toll the running of the statute of limitations on a § 1981 claim based on the same facts. Consequently, he reversed his previous position and dismissed the § 1981 claims as time barred since the original complaint was not filed until more than three years after the § 1981 cause of action accrued.
 
 
 26
 Finally, Judge Brieant dismissed plaintiffs' remaining claims that TWA and ALPA had violated the duty of fair representation. He held that "TWA does not owe any such duty in the first instance to its employees," and that ALPA had "acted entirely within the permissible range of reasonableness" by merely continuing in effect the date-of-hire seniority system. This appeal followed.
 
 II.
 
 27
 On appeal, the rejection of the "refusal to hire" claims as untimely asserted has not been seriously challenged. Appellants argue again, however, relying on United States v. Bethlehem Steel Corp., 446 F.2d 652 (2d Cir. 1971), and Acha v. Beame, supra, that the operation of the TWA-ALPA seniority system, which allegedly perpetuates the effects of past discriminatory practices, constitutes a continuing violation of Title VII. They are joined in this contention by the EEOC, which urges in an amicus brief that under Title VII an employee may challenge a neutral seniority system which perpetuates prior discrimination at any time as long as he remains subject to that system and can prove that it preserves past discrimination against him. See also the EEOC's memorandum interpreting United Air Lines, Inc. v. Evans, supra, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), issued subsequent to the submission of its amicus brief.
 
 
 28
 It cannot be denied that certain language contained in Bethlehem Steel and Acha, might be read as supporting appellants' position that a facially neutral date-of-hire seniority system violates Title VII insofar as it adversely affects identifiable victims of past discrimination.[8] The main emphasis of those cases, however, was on the question of remedy, and the language on which appellants rely can perhaps be attributed to the absence in those cases of separate discussions of "violation issues" and "remedy issues." See Chance v. Board of Examiners, 534 F.2d 993, 1004 (Oakes, J. dissenting), modified on rehearing, 534 F.2d 1007 (2d Cir. 1976), petition for cert. filed, 45 U.S.L.W. 3263 (U.S. Sept. 7, 1976); compare United Air Lines, Inc. v. Evans, supra, 97 S.Ct. at 1889. In any event, Bethlehem Steel and Acha did not present the type of limitations problem with which we are confronted here. We find this narrow question controlled by the Supreme Court's more recent decisions in Franks v. Bowman Transportation Co., supra, and United Air Lines, Inc. v. Evans, supra.
 
 
 29
 The issue posed by Franks was whether identifiable job applicants who were denied employment because of their race after the effective date and in violation of Title VII could be awarded seniority status retroactive to the dates of their employment applications, 424 U.S. at 750, 96 S.Ct. 1251. Before answering that question in the affirmative, the Court had to reject the argument that such seniority adjusting relief was barred by § 703(h) of Title VII, 42 U.S.C. § 2000e-2(h). See supra n. 5. Its discussion is instructive in the case at bar.
 
 
 30
 The Franks Court first observed that the underlying legal wrong affecting petitioners in that case was "not the alleged operation of a racially discriminatory seniority system but of a racially discriminatory hiring system." 424 U.S. at 758, 96 S.Ct. at 1261. Petitioners there, like appellants here, did not seek modification or elimination of the existing seniority system but rather an award of the seniority status they would have enjoyed under that system had it not been for the discriminatory refusal to hire.
 
 
 31
 The Court then described § 703(h) as "only a definitional provision", id., the thrust of which is
 
 
 32
 directed toward defining what is and what is not an illegal discriminatory practice in instances in which the post-Act operation of a seniority system is challenged as perpetuating the effects of discrimination occurring prior to the effective date of the Act.
 
 
 33
 424 U.S. at 761, 96 S.Ct. at 1263. See also Powell, J., concurring in part and dissenting in part, 424 U.S. at 781, 96 S.Ct. at 1272. ("I also agree with Part II of the opinion insofar as it determines the 'thrust' of § 703(h) of Title VII to be the insulation of an otherwise bona fide seniority system from a challenge that it amounts to a discriminatory practice because it perpetuates the effects of a pre-Act discrimination.")
 
 
 34
 After analyzing the text and legislative history of § 703(h), Justice Brennan, writing for the Court, concluded that the subsection did not bar seniority adjusting relief otherwise appropriate under the remedial provisions of Title VII "once an illegal discriminatory practice occurring after the effective date of the Act is proved. . . . ." 424 U.S. at 762, 96 S.Ct. at 1263.
 
 
 35
 In United Air Lines, Inc. v. Evans, supra, decided after oral argument in this case, the Court clarified its Franks holding in a case which is largely dispositive of the question at hand.
 
 
 36
 Evans was employed by United as a flight attendant from November, 1966 to February, 1968 at which time she was forced to resign pursuant to a United policy later found discriminatory which refused to permit female flight attendants to be married. She was not a party to the suit which challenged such forced resignations as violative of Title VII, and she did not initiate any proceedings of her own by filing a charge with the EEOC within 90 days after her separation, as was then required by § 706(d), 42 U.S.C. § 2000e-5(d).[9] See supra n. 3.
 
 
 37
 On February 16, 1972, Evans was again hired as a new employee. When her requests for credit for her pre-1972 seniority were denied by United, she commenced an action. The district court dismissed her complaint, finding it time barred for failure to file a charge within 90 days of her separation in 1968. A divided panel of the Seventh Circuit initially affirmed; then, after granting rehearing, unanimously reversed on the supposed authority of Franks v. Bowman Transportation Co., supra. The Supreme Court reversed the Seventh Circuit and held that the complaint was properly dismissed.
 
 
 38
 While Evans acknowledged that it was too late to obtain relief based on a 1968 unlawful employment practice, she argued, like appellants here, that United was guilty of a "present, continuing violation of Title VII" and that therefore her claim was timely. She claimed that United illegally discriminates against her since "the seniority system gives present effect to the past illegal act and therefore perpetuates the consequences of forbidden discrimination." 97 S.Ct. at 1888.
 
 
 39
 Justice Stevens, writing for the majority, first acknowledged that the seniority system gives present effect to a past act of discrimination. He then continued:
 
 
 40
 But United was entitled to treat that past act as lawful after respondent failed to file a charge of discrimination within the 90 days then allowed by § 706(d). A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.
 
 
 41
 Respondent emphasizes the fact that she has alleged a continuing violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present violation exists. She has not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a discriminatory reason any differently than former employees who resigned or were discharged for a non-discriminatory reason. In short, the system is neutral in its operation.
 
 
 42
 97 S.Ct. at 1889.
 
 
 43
 The Court did not view its decision the previous term in Franks as controlling:
 
 
 44
 When that case reached this Court, the issues relating to the timeliness of the charge and the violation of Title VII had already been decided; we dealt only with a question of remedy. In contrast, in the case now before us we do not reach any remedy issue because respondent did not file a timely charge based on her 1968 separation and she has not alleged facts establishing a violation since she was rehired in 1972.
 
 
 45
 Id. (footnotes omitted).
 
 
 46
 Finally, Justice Stevens noted that since Evans did not challenge the bona fides of United's seniority system, and did not allege that the system was intentionally designed to discriminate because of race, color, religion, sex, or national origin, § 703(h) is an additional ground for rejecting her claim:
 
 
 47
 The statute does not foreclose attacks on the current operation of seniority systems which are subject to challenge as discriminatory. But such a challenge to a neutral system may not be predicated on the mere fact that a past event which has no present legal significance has affected the calculation of seniority credit, even if the past event might at one time have justified a valid claim against the employer. A contrary view would substitute a claim for seniority credit for almost every claim which is barred by limitations. Such a result would contravene the mandate of § 703(h).
 
 
 48
 97 S.Ct. at 1890.
 
 
 49
 It is plain, in the light of Evans and Franks, that the Title VII claims of Cates, George, and Whitehead were not timely asserted. Those decisions sharply distinguished the issues whether there has been a violation of Title VII and what the appropriate remedy is for such a violation, while earlier lower court decisions tended to mix the two questions together. Unless there is a timely charge which is proven to be a violation of Title VII, the question of remedy is never reached. See also International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 1858-65, 52 L.Ed.2d 396 (1977).
 
 
 50
 After Evans and Franks, the second amended complaint cannot be construed as alleging "two distinct unlawful employment practices." In fact, only one unlawful employment practice was alleged discriminatory refusal to hire and that was long since time barred. What was characterized as a second independent violation of Title VII, the seniority claim, was nothing more than the residual effect of a prior discriminatory refusal to hire, which could have been remedied had that past unlawful employment practice been timely asserted and proven.
 
 
 51
 As in Franks, the underlying wrong which appellants challenge is not a racially discriminatory seniority system but an allegedly racially discriminatory hiring system which has not functioned since at least 1970. They make no charges of current discrimination or that the seniority system is not bona fide or ever operated in other than a neutral fashion. Their only claim is that appellants occupy a lower spot on the seniority list than they rightfully should because of the perpetuation of prior discrimination.
 
 
 52
 Under Evans, this does not charge a present violation of Title VII. Nor does the fact that present disadvantages arising from past discrimination crystallized in layoffs for Cates and George trigger a new period within which charges may be filed, as the district court believed. Cates and George stand in the same position as Whitehead, and, since the neutral seniority system here was insulated from attack by § 703(h), can only point to the initial refusal to hire as a violation of Title VII. Because such a claim was not asserted in timely fashion by any of the appellants, as held by the court below, see supra at 1068,[10] it has no present legal significance. We therefore affirm the dismissal of appellants' Title VII allegations.
 
 III.
 
 53
 In Johnson v. Railway Express Agency, Inc., supra, the Supreme Court ruled that the timely filing of a charge of employment discrimination with the EEOC under Title VII does not toll the running of the statute of limitations applicable to an action based on the same facts but instituted under 42 U.S.C. § 1981.[11] Appellants in effect concede that if Johnson is applied in the typical retroactive fashion to this case, as it was in the court below, their § 1981 claims are also time barred. They argue, however, that consideration of the factors enunciated in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971),[12] as well as a line of lower court cases from the Fifth Circuit,[13] warrants limiting Johnson to prospective application only.
 
 
 54
 We are unconvinced. As Chevron indicates,[14] the Supreme Court is well aware of how to avoid the effects of applying one of its rulings retroactively to the case at bar. Yet in Johnson, the Court chose to apply its ruling that § 1981 statutes of limitations are not tolled by timely filed EEOC charges to the facts at hand, despite its awareness that this would preclude petitioner there from obtaining any relief since his Title VII claims were also time-barred. 421 U.S. at 466, 95 S.Ct. 1716.
 
 
 55
 If anything, the instant case is a less attractive one than Johnson for prospective application only of the "nontolling" rule. In Johnson, the plaintiff had filed his Title VII charges in a timely manner and would have had a timely § 1981 claim if the EEOC filing had tolled the applicable one year statute of limitations. In contrast, appellants here failed to file Title VII charges within the required time, and took no steps with respect to their § 1981 claims within the much longer three-year statute of limitations applicable.[15]
 
 
 56
 The cases from the Fifth Circuit which appellants cite, see supra n. 13, the reasoning of which was rejected by that Circuit in Dupree v. Hutchins Brothers, 521 F.2d 236 (5th Cir. 1975), all based their decisions that Johnson should not be applied retroactively on the fact that the tolling effect of EEOC charges was settled law in the Fifth Circuit. See Boudreaux v. Baton Rouge Marine Contracting Co., 437 F.2d 1011, at 1017 n. 16 (5th Cir. 1971). Appellants have no similar claim. Moreover, the fact that their Title VII claims were not timely asserted suggests that the failure to file a § 1981 complaint was attributable to tardiness in general rather than reliance on the tolling effect of EEOC charges. We conclude that the same considerations which compelled the Court to apply the non-tolling rule of Johnson in that case[16] make it reasonably certain that its application was contemplated in situations like this where appellants, to a greater extent than petitioner in Johnson, have "slept on (their) § 1981 rights." 421 U.S. at 466. See Patterson v. American Tobacco Co., 535 F.2d 257, 275 (4th Cir. 1976), cert. denied, 429 U.S. 920, 97 S.Ct. 314-15, 50 L.Ed.2d 286 (1976); Greene v. Carter Carburetor Co., 532 F.2d 125, 127 (8th Cir. 1976).
 
 IV.
 
 57
 In light of the foregoing rulings, appellants' remaining claims that ALPA and TWA violated the duty of fair representation by negotiating and maintaining the neutral date-of-hire seniority system merit little discussion.
 
 
 58
 Steele v. Louisville & Nashville R.R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), which first established the duty of fair representation of exclusive bargaining representatives under the Railway Labor Act, 45 U.S.C. § 151, et seq., applicable here by virtue of 45 U.S.C. § 181, also recognized that this duty
 
 
 59
 does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented. Variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority, the type of work performed, the competence and skill with which it is performed, are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interest or merit.
 
 
 60
 323 U.S. at 203, 65 S.Ct. at 232.
 
 
 61
 Since the operation of the seniority system at issue here does not constitute an independent violation of Title VII or § 1981, and admittedly was not instituted for discriminatory reasons and has not been applied in other than a neutral manner, we perceive no way in which ALPA violated its duty as exclusive representative by bargaining for such a system. See International Brotherhood of Teamsters v. United States, supra, 97 S.Ct. at 1863-65; Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Jackson v. Trans World Airlines, Inc., 457 F.2d 202 (2d Cir. 1972); Jones v. Trans World Airlines, Inc., 495 F.2d 790 (2d Cir. 1974). Moreover, while there is authority for holding an employer liable for its participation in a union's breach of its duty as exclusive bargaining agent, see, e. g., O'Mara v. Erie Lackawanna R.R., 407 F.2d 674, 679 (2d Cir. 1969), aff'd sub nom. Czosek v. O'Mara, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970); Jones v. Trans World Airlines, Inc., supra, at 798; Richardson v. Texas and New Orleans R.R., 242 F.2d 230, 235-36 (5th Cir. 1957), this is not an appropriate case for application of such a rule. ALPA did not violate its duty so it is plain that TWA did not aid it in any such violation.
 
 
 62
 Affirmed.
 
 
 
 *
 Frederick van Pelt Bryan, of the Southern District of New York, sitting by designation
 
 
 [1]
 Furlough is the airline industry's term for layoff
 
 
 [2]
 By agreement of the parties, approved by the court below, questions pertaining to the class allegations were postponed until rulings were obtained on motions to dismiss the complaint. Since the district court ultimately did dismiss the second amended complaint, it found it unnecessary to determine whether the requirements of Fed.R.Civ.P. 23 had been satisfied
 
 
 [3]
 This subsection provides:
 A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant to seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the state or local agency.
 Judge Brieant later concluded that since there had been no allegations that charges were filed with the New York State Division of Human Rights, or any other state or local agency, the 180-day period was applicable. But see Weise v. Syracuse University, 522 F.2d 397, 411 (2d Cir. 1975). We note that use of the longer 300-day period would not make a difference on these facts.
 Prior to amendment by the Equal Employment Act of 1972, applicable to all pending cases as of March 24, 1972, see Int'l Union of Electrical Radio & Machine Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc., 429 U.S. 229, 97 S.Ct. 44l, 50 L.Ed.2d 427 (1976), the day on which appellants here filed charges, (then) § 706(d) of Title VII, 42 U.S.C. § 2000e-5(d), gave an aggrieved person 90 days after the occurrence of an alleged unlawful employment practice to file charges directly with the EEOC and 210 days if he had first filed with a state or local agency. 78 Stat. 260. The 1972 amendments added a new subsection (a) to § 706, redesignated subsection (d) as subsection (e), and enlarged the limitations periods.
 It is now established that "(t)imely filing is a prerequisite to the maintenance of a Title VII action." United Air Lines, Inc. v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 1887 n.4, 52 L.Ed.2d 571 (1977); DeMatteis v. Eastman Kodak Co., 511 F.2d 306, 309 (2d Cir. 1975); Weise v. Syracuse University, supra, at 412.
 
 
 [4]
 This circuit has consistently held that the three-year statute of limitations provided by N.Y.C.P.L.R. § 214(2) governs federal civil rights cases brought in New York. Romer v. Leary, 425 F.2d 186 (2d Cir. 1970); Kaiser v. Cahn, 510 F.2d 282 (2d Cir. 1974); DeMatteis v. Eastman Kodak Co., supra, at 311-12 n.8; Weise v. Syracuse University, supra, at 408 n.15
 
 
 [5]
 This subsection provides in pertinent part:
 Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system . . . provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin . . . .
 
 
 [6]
 § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) provides:
 It shall be an unlawful employment practice for an employer
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
 
 
 [7]
 Judge Brieant felt that selecting the date of layoff as the starting point for the filing period had the advantage of certainty and ease of application. He viewed it as the time when an affected employee feels most aggrieved and can reasonably be expected to take steps to protect his rights. He also thought that use of the date of layoff would promote prompt resolution of the respective rights of all workers under a challenged seniority system
 
 
 [8]
 See, e. g., United States v. Bethlehem Steel Corp., supra, at 657-59; Acha v. Beame, supra, at 654-56
 
 
 [9]
 The Court stated flatly: "A claim based on that discriminatory act (forced resignation) is therefore barred." 97 S.Ct. at 1887
 
 
 [10]
 We have no occasion in this case to decide whether the period within which charges must be filed under § 706(e), 42 U.S.C. § 2000e-5(e), on a refusal to hire claim runs from the date employment was unlawfully refused or from the later date of assignment of a lesser level of seniority attributable to a prior discriminatory refusal of employment. Judged by either standard, appellants' filings were untimely
 
 
 [11]
 The section provides:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 
 
 [12]
 The factors considered in cases dealing with "nonretroactivity" according to Chevron were:
 First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . . Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "(w)here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."
 404 U.S. at 106-107, 92 S.Ct. at 355 (citations omitted).
 
 
 [13]
 Bush v. Wood Bros. Transfer Co., 398 F.Supp. 1030 (S.D.Tex.1975); Villareal v. Braswell Motor Freight Lines, Inc., 11 FEP Cases 831 (S.D.Texas 1975); Hambrick v. Royal Sonesta Hotel, 403 F.Supp. 943 (E.D.La.1975)
 
 
 [14]
 In that case, the Court held that under its decision in Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), announced while Chevron was before the district court, state statutes of limitations rather than the admiralty doctrine of laches determine the timeliness of personal injury actions under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq. It also held, however, that this ruling based on Rodrigue should not be applied retroactively and accordingly permitted Huson's personal injury suit to proceed
 
 
 [15]
 The foregoing analysis for determining when appellants' Title VII claims accrued, supra at 5143-5144, is applicable as well to their § 1981 claims. See Copus, Impact of Title VII Rulings on Business, N.Y.L.J., July 18, 1977, at 4
 
 
 [16]
 The Johnson Court seemed to view the non-tolling effect of Title VII charges on § 1981 claims as the price the civil rights litigant pays for the availability of these two "separate, distinct, and independent" remedies. 421 U.S. at 461, 466, 95 S.Ct. 1716. See also Int'l Union of Electrical, Radio & Machine Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc., supra. It must be acknowledged that this concept, while "arguably harsh", Williams v. Walsh, 558 F.2d 667 (2d Cir., decided June 27, 1977), slip op. at 4501, applies as strongly in the instant case as it did in Johnson