Charles BERTHEAS, Plaintiff,

v.

TRANS WORLD AIRLINES, INC., Air Lines Stewards and Stewardesses Association, Local 550, Transport Workers Union of America, AFL–CIO, Local 551, Transport Workers Union of America, AFL–CIO, Transport Workers Union of America, AFL–CIO and Independent Federation of Flight Attendants, Defendants.

No. 75C 2015.

United States District Court, E. D. New York.

May 9, 1978.

Richard A. Dienst, Schofield, Dienst & Hartnett, New York City, for plaintiff.

Eric D. Witkin, Poletti, Freidin, Prashker Feldman & Gartner, New York City, for TWA.

Renee Rivkis, O'Donnell & Schwartz, New York City, for ALSSA, Local 551, and TWU.

## OPINION

PLATT, District Judge.

Plaintiff brings this suit pursuant to Title VII of the Civil Rights Act of 1964 [1] ("Title VII") charging discrimination by defendants on the basis of sex in the change of various seniority practices affecting the plaintiff.

Plaintiff, who is male, was hired by defendant Trans World Airlines, Inc. ("TWA") as a Flight Purser for its International Operations on March 16, 1970. On April 17, 1970, plaintiff commenced work as a Flight Purser and began to accrue seniority in accordance with the then existing collective bargaining agreement, signed August 8, 1967, between defendants TWA and Air Lines Stewards and Stewardesses Association ("ALSSA").

The 1967 contract provided, in relevant part, that TWA Cabin Attendants (then called Hostesses and then all females), who could meet the qualifications for Purser would be given an opportunity to fill Flight Purser vacancies, as they occurred, before TWA resorted to hiring new employees to fill those vacancies. Female Cabin Attendants filled the first Purser vacancies pursuant to the above contract in or about May of 1968. These Cabin Attendants were credited, as Flight Pursers, with the seniority they had accrued while serving as Cabin Attendants, for purposes of rates of pay, vacation and sick leave but not for purposes of bidding on flights. For this latter purpose, the 1967 contract provided that an upgraded Cabin Attendant went to the "bottom" of the Flight Purser Seniority List and then began to accrue seniority, just as plaintiff did at the time of his hire.

When plaintiff was hired in 1970, there were already 34 female Pursers ahead of him in seniority because they had become Pursers before he had under the terms of the 1967 contract.

On October 22, 1970, defendants TWA and ALSSA entered into a new collective bargaining agreement which changed the seniority system described above.[2] Specifically, this change provided, in essence, that Cabin Attendants (who, on October 22, 1970, were still all females) would, when promoted to Purser vacancies, be credited, as Pursers, with their time of service as Cabin Attendants, for *all* purposes, including for purposes of bidding on flights. Thus, for example, when a female Cabin Attendant who had been hired by defendant TWA prior to March 16, 1970, plaintiff's day of hiring, was promoted to the position of Purser after October 22, 1970, she would occupy a higher seniority than plaintiff for all purposes, thereby diminishing his relative seniority. Prior to October 22, 1970, such a female would have assumed the Purser's position without any accrued seniority for the purpose of bidding on flights (such seniority would begin to accrue only at that point), and would thus not have disturbed plaintiff's relative seniority for bidding purposes.

Plaintiff was clearly disadvantaged in his relative seniority by the change in the seniority system, and the female Cabin Attendants subject to promotion were just as clearly benefitted. It should be noted, however, that there may also be female Pursers who, pursuant to the 1967 contract, had higher seniority than plaintiff and who were also potentially disadvantaged by the change in systems.

More than a year after this change in seniority systems, plaintiff filed a complaint with the New York State Division of Human Rights ("the State Division") on November 19, 1971, challenging the new seniority system. This complaint was dismissed on December 17, 1971, and this dismissal was affirmed by the State Human Rights Appeal Board ("SARAB") on October 17, 1972. Plaintiff then did nothing

---

1. 42 U.S.C. § 2000e, et seq.

2. This change in seniority systems was re-enacted in subsequent collective bargaining agreements on December 14, 1973, between TWA and ALSSA, and on July 29, 1976, between TWA and defendant Local 551. Defendant Independent Federation of Flight Attendants is currently the authorized bargaining representative for TWA's Flight Attendants.

further until January 26, 1973, when he filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") against TWA and ALSSA. This complaint alleged that the most recent act of discrimination had taken place on January 1, 1973. Plaintiff then, on September 21, 1973, filed another charge with the EEOC identical to the earlier charge except that a charge of continuing discrimination was added pursuant to the EEOC's request. On September 4, 1975, the EEOC issued a determination on plaintiff's charge finding "no reasonable cause to believe that the respondents (defendants TWA and ALSSA) have violated Title VII of the Civil Rights Act of 1964, as alleged," and attaching a "Notice of Right to Sue."

On December 2, 1975, plaintiff commenced this suit seeking a Court order instructing defendants to revert to the seniority system in effect when he was first hired prior to the change effected on October 22, 1970. Defendant has now moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP") on the ground that this Court lacks jurisdiction over plaintiff's Title VII claims because of plaintiff's failure to comply with the statutory prerequisites of a Title VII suit.

Plaintiff has also moved this Court (i) pursuant to FRCP 42(a) to consolidate with this action a related proceeding in the United States District Court for the Southern District of New York ("SDNY"), (ii) pursuant to FRCP 23(c)(4)(B) for a sub-class determination so that this action might proceed as a sub-class action, and (iii) pursuant to FRCP 20(a) to join the Independent Federation of Flight Attendants ("IFFA"), the successor as union bargaining agent to ALSSA, Local 551, and Transport Workers Union of America ("TWU"), as a party defendant to the related SDNY proceeding when that proceeding is consolidated here. Inasmuch as this Court dismisses the instant proceedings for lack of jurisdiction, further consideration of plaintiff's motion is unnecessary.

On October 22, 1970, when the alleged act of discrimination occurred, Section 706(d) of Title VII [3] provided as follows with respect to the time for filing a charge with the EEOC:

"(d) A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred, except that in the case of an unlawful employment practice with respect to which the person aggrieved has followed the procedure set out in subsection (b) of this section, such charge shall be filed by the person aggrieved within two hundred and ten days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency."

On March 24, 1972, this section was redesignated Section 706(e) [4] and was amended to read as follows:

"(e) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or

---

**3.** 42 U.S.C. § 2000e–5(d).

**4.** 42 U.S.C. § 2000e–5(e).

local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency."

The law is well settled that the filing of a timely charge with the EEOC is a prerequisite to a private suit under Title VII. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 555, n.4, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Cates v. Trans World Airlines,* 561 F.2d 1064, 1066–67, n.3 (2d Cir. 1977); *Goss v. Revlon, Inc.,* 548 F.2d 405, 406 (2d Cir. 1976). Plaintiff filed his original charge with the EEOC 827 days after the change in seniority systems on October 22, 1970. Thus, defendant argues that whether the 210 day period of Section 706(d) or the 300 day period of Section 706(e) applies, plaintiff's EEOC claim was untimely filed and jurisdiction in this Court is accordingly barred.

■ In response to this argument, plaintiff makes two counter-arguments. The first of these is that his EEOC charge was timely because the continuing effects of the change in seniority systems, the original discriminatory act, constituted "continuing violations" of Title VII which started the time limitations anew, thereby making his EEOC charge timely. While this theory of "continuing violations" has, in some cases, rendered timely an ostensibly late filing of a charge with the EEOC, *see Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App. D.C. 69, 77, 478 F.2d 979, 987 (1973); *Cox v. United States Gypsum Co.,* 409 F.2d 289, 290 (7th Cir. 1969); *Jamison v. Olga Coal Co.,* 335 F.Supp. 454, 458–59 (S.D.W.Va. 1971), a recent case in the Supreme Court and another in the Second Circuit make it clear that application of this theory in the instant context is not justified.

In *United Air Lines v. Evans, supra,* the Supreme Court considered the argument that the continuing effects of a discriminatory discharge, followed by a return to

work with loss of seniority, constituted a "continuing violation" which supported an otherwise untimely EEOC claim. The Court rejected this contention, noting that (431 U.S. at 558, 97 S.Ct. at 1889):

"United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is *whether any present violation exists.* She has not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a discriminatory reason any differently than former employees who resigned or were discharged for a nondiscriminatory reason. In short, the system is neutral in its operation." (Emphasis added).

Similarly, in *Cates, supra,* the Second Circuit rejected the argument that the present effects of a past discriminatory refusal to hire transmitted by a facially neutral seniority system were "continuing violations", noting that (561 F.2d at 1072):

"[T]he second amended complaint cannot be construed as alleging 'two distinct unlawful employment practices.' In fact, only one unlawful employment practice was alleged—discriminatory refusal to hire—and that was long since time barred. What was characterized as a second independent violation of Title VII, the seniority claim, was nothing more than the residual effects of a prior discriminatory refusal to hire . . . ."

The instant case, however, is not on all fours with the *Evans* and *Cates* decisions. In those cases, the original discriminatory act was the refusal to hire or the dismissal of the plaintiffs in question. Here, on the other hand, the discriminatory act alleged is the actual change in seniority systems. Plaintiff here alleges that the change in seniority systems was discriminatory on the basis of sex in view of the fact that, at that time, the beneficiaries of the change in seniority systems, *i. e.,* all Cabin Attendants, were female.[5]

---

5. The Court also cannot ignore that the change in seniority systems occurred in the midst of a suit by female cabin attendants charging the defendant TWA with sex discrimination in de-

fendant's cabin attendants employment practices. *See Maguire v. Trans World Airlines Inc.,* 70 Civ. 3947 (S.D.N.Y.).

Significantly, however, plaintiff does not allege that the new seniority system is discriminatory on its face. Such allegations could not be supported because the new system itself makes no distinction on the basis of sex; in fact, it works an equal detriment on all Pursers in plaintiff's position, be they male or female, and bestows an equal benefit on Cabin Attendants, regardless of gender. In view of the facial neutrality of the new seniority system, the Court is persuaded that the rationale of *Evans* and *Cates* applies here and that no "present violation" of Title VII exists by virtue of the application of the new seniority system so as to validate plaintiff's otherwise untimely EEOC charge under the theory of "continuing violations."

■ Plaintiff's second response to defendants' jurisdictional challenge is the argument that, while it is generally true that a timely filed charge with the EEOC is a predicate to a private suit in federal court, this case falls within an established exception to that rule which is based on various equitable considerations. Specifically, plaintiff points primarily[6] to Judge Weinfeld's decision in *DeFigueiredo v. Trans World Airlines, Inc.,* 322 F.Supp. 1384 (S.D. N.Y.1971), a companion case to this one which held that, inasmuch as the filing requirement of Title VII is intended to facilitate consideration and since an attempt to conciliate had already been made by the EEOC, and had failed, in the Hostesses' discrimination suit against TWA,[7] failure of DeFigueiredo to file a charge with the EEOC did not defeat the Court's jurisdiction. Plaintiff argues that *DeFigueiredo* is controlling precedent inasmuch as it deals with the identical claims and factual context at issue here.

This Court, however, declines to follow this precedent. This Court does not believe that Judge Weinfeld intended by his decision to justify a complete suspension of any

statute of limitation or other jurisdictional prerequisite such that any similarly situated plaintiff could at any time and, as in the instant case, as many as four years later, bring suit against defendant TWA (not to mention the additional defendants who may not have had the benefit of an EEOC conciliation proceeding) without complying with the clear statutory prerequisites.

Moreover, while Judge Weinfeld stated, in 1971, that it was " . . . not as clear as defendant contends that filing a complaint with the EEOC is a sine qua non to the commencement of a suit in the district court", *DeFigueiredo,* 322 F.Supp. at 1386, n.7, it has since become much clearer that such a filing is, indeed, a prerequisite to suit in court. See, *United Air Lines, Inc. v. Evans, supra; Alexander v. Gardner-Denver Co., supra; Cates v. Trans World Airlines, supra;* and *Goss v. Revlon, Inc., supra.* While it remains true that, in some instances, tolling of the filing time limits can be justified on equitable grounds, *see Smith v. American President Lines Ltd. and Marine Engineers' Beneficial Association, AFL–CIO,* 571 F.2d 102 at 108–109 (2d Cir. 1978); *Dartt v. Shell Oil Co.,* 539 F.2d 1256 (10th Cir. 1976), *aff'd by an equally divided Court,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 472 (1977); *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975), this Court does not find such tolling to be applicable here.

Indeed, the Ninth Circuit in a recent case, *Inda v. United Air Lines, Inc.,* 565 F.2d 554 (9th Cir. 1977), considered and explicitly rejected the argument advanced by plaintiff here. Specifically, in *Inda,* plaintiffs argued that, since plaintiffs in other actions similarly situated to themselves had filed timely EEOC charges asserting the same claims of discrimination, thereby affording the EEOC and defendant United Air Lines an opportunity to conciliate, then failure to file similar timely charges, which would

---

**6.** Plaintiff also relies upon decisions in class action discrimination suits which held that individual members of the class need not file an EEOC charge. *See, e. g., Oatis v. Crown Zellenbach Corp.,* 398 F.2d 496 (5th Cir. 1968). These cases, however, have no application in

this context where plaintiff does not seek to join a class but rather seeks to initiate an entirely separate suit.

**7.** *See* note 5, *supra.*

have been "unnecessary and redundant", should not defeat the Court's jurisdiction and frustrate their suit. The District Court accepted this argument and accordingly denied defendant's motion to dismiss. On review, however, the Ninth Circuit, rejected the claim that (565 F.2d at 559):

" . . . the filing of a charge by one employee should toll the statute for all others who, at the time of the filing, could themselves have filed for the same violation,"

and held that (565 F.2d at 559):

" . . . if one brings suit on his own behalf, or as named plaintiff on behalf of a class, he must have secured a right to . sue by timely following the procedures set forth in Title VII."

The same conclusion applies to plaintiff in the instant case. For this Court to have jurisdiction over plaintiff's claims under Title VII, plaintiff must demonstrate compliance with the appropriate statutory prerequisites. It is apparent that he has not so complied and that he cannot be excused from his failure to comply. Therefore, defendants' motion to dismiss must be and the same hereby is granted.